**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

| | | |
|---|---|---|
| JASON TYE MYERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CAUSE NO. 3:08-CV-186 PS |
| vs. | ) | |
| | ) | |
| STASON L. WIETE, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Jason Tye Myers, a *pro se* prisoner, filed a Complaint under both 42 U.S.C. § 1983 and

state law.  In his complaint (DE1) and declaration (DE 2), Myers provides all of the necessary

factual background for this case.  Just before midnight on February 17, 2004, Myers drove his

black Honda Accord to a McDonalds in West Lafayette, Indiana.  At the time, he already had

pending charges against him for battering his girlfriend.  When he pulled into the parking lot, a

police officer stopped him and asked him his name.  He told the officer his name and the police

report states that Myers also said that he was coming from his girlfriend's house.  (DE 1-2 at 1.)

The police officer stopped Myers because he was looking for a white male driving a black

Honda Accord in the area and Myers matched that description. Dispatch had told him to be on

the lookout because a caller had reported that Jason Myers had an outstanding warrant and was

driving while suspended from 2501 Soldiers Home Road toward State Road 25 and U.S. 231.

Using Myer's driver's licence as further identification, the officer confirmed with dispatch that

he was driving while suspended and proceeded to cite him for that violation and impound his

car. Myers voluntarily surrendered his keys to the officer, who discovered marijuana during an

inventory of the car's contents.  Myers was then arrested and later charged for these offenses.

Myers states that as a result of the stress caused by these events he began regularly using cocaine

and that in order to support his habit, he began selling it too.  It appears that as a result of his

eventual conviction and twenty-five year sentence for selling cocaine, the lesser charges arising

from the events in the McDonalds' parking lot were dismissed.  (*See* DE 1-2 at 9 & DE 1-6.)

## I.  REVIEW UNDER § 1915A

Pursuant to 28 U.S.C. § 1915A, the Court must review the merits of a prisoner complaint

and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may

be granted, or seeks monetary relief against a defendant who is immune from such relief.

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, or any

portion of a complaint, for failure to state a claim upon which relief can be granted.  Courts

apply the same standard under § 1915A as when addressing a motion under Rule 12(b)(6).

*Lagerstrom v. Kingston*, 463 F.3d 621, 624 (7th Cir. 2006).

The pleading standards were recently retooled by the Supreme Court. In the context of a

motion to dismiss for failure to state a claim, the Court stated that the "plaintiff's obligation to

provide the grounds of his entitlement to relief requires more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v.*

*Twombly*, 127 S.Ct. 1955, 1964-65 (2007).  Instead the Court held that the factual allegations in

the complaint "must be enough to raise a right to relief above the speculative level."  *Id*. at 1965.

Two weeks later the Supreme Court decided *Erickson v. Pardus*, 127 S.Ct. 2197 (2007).  In

*Erickson* the Court also took up the issue of pleading standards, but this time in the context of

*pro se* litigation.  In *Erickson*, the Court stated that "[s]pecific facts are not necessary" to meet

the requirements of Rule 8(a).  The Court further noted that a "document filed *pro se* is to be

liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less

stringent standards than formal pleadings drafted by lawyers." *Id*. at 2200.  In an effort to

reconcile *Twombly* and *Erickson* the Seventh Circuit has read those cases together to mean that

"at some point the factual detail in a complaint may be so sketchy that the complaint does not

provide the type of notice of the claim to which the defendant is entitled under Rule 8."

*Airborne Beepers & Video, Inc. v. AT&T Mobility*, 499 F.3d 663, 667 (7th Cir. 2007).

## II.  APPLICATION OF §1915A TO MYERS' CLAIMS

Myers' first claim concerns the events that occurred at the McDonalds on February 17,

2004.  The problems with his first claim are both procedural and substantive.  Procedurally, he

has a statute of limitations problem.  Though the statute of limitations is an affirmative defense,

"when the existence of a valid affirmative defense is so plain from the face of the complaint that

the suit can be regarded as frivolous, the district judge need not wait for an answer before

dismissing the suit."  *Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002).  Because there

is no federal statute of limitations for § 1983 actions, courts apply the most appropriate state

statute of limitations.  Section 1983 claims are considered as personal injury claims for purposes

of determining the applicable state statute of limitations.  *Wilson v. Garcia*, 471 U.S. 261 (1985).

The Indiana statute of limitations applicable to § 1983 actions is the two-year period found in

Indiana Code § 34-11-2-4.  *Campbell v. Chappelow*, 95 F.3d 576, 580 (7th Cir. 1996).  This

complaint is dated April 14, 2008, more than four years after the events giving rise to this claim,

and more than two years after the statute of limitations expired.  Therefore this claim is barred by

the statute of limitations and must be dismissed.

Nevertheless, even if it was not untimely, Myers claim is not substantively meritorious.

Myers alleges that

> Upon seeing a white male (Plaintiff) driving a black Honda Accord headed toward the direction of the suspected criminal and without verification of the caller's identification (nor reliability), a name to put with the suspect or a reasonable suspicion that a crime had been, was, or was about to be committed by the plaintiff, Defendant [Police Officer] Wiete pursued the individual with a terry stop in mind.

(DE 1 at 4 ¶ 9.)  This argument misapplies the legal standards enunciated by the Supreme Court

regarding both anonymous tips and *Terry* stops.

> The officer making a *Terry* stop must be able to articulate something more than an inchoate and unparticularized suspicion or hunch.  The Fourth Amendment requires some minimal level of objective justification for making the stop.  That level of suspicion is considerably less than proof of wrongdoing by a preponderance of the evidence.  We have held that probable cause means a fair probability that contraband or evidence of a crime will be found, and the level of suspicion required for a *Terry* stop is obviously less demanding than for probable cause.
> Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause.

*Alabama v. White*, 496 U.S. 325, 329-330 (1990) (brackets, ellipsis, quotation marks and

citations omitted).  In holding that the stop was justified, the Court went on to explain:

> The Court's opinion in [*Illinois v.*] *Gates*[, 462 U.S. 213 (1983)] gave credit to the proposition that because an informant is shown to be right about some things, he is probably right about other facts that he has alleged, including the claim that the object of the tip is engaged in criminal activity.  Thus, it is not unreasonable to conclude in this case that the independent corroboration by the police of significant aspects of the informer's predictions imparted some degree of reliability to the other allegations made by the caller.
> We think it also important that, as in *Gates*, the anonymous tip contained a range of details relating not just to easily obtained facts and conditions existing at the time of the tip, but to future actions of third parties ordinarily not easily predicted.  The fact that the officers found a car precisely matching the caller's

4

description in front of the 235 building is an example of the former.  Anyone could have "predicted" that fact because it was a condition presumably existing at the time of the call.  What was important was the caller's ability to predict respondent's future behavior, because it demonstrated inside information – a special familiarity with respondent's affairs.  The general public would have had no way of knowing that respondent would shortly leave the building, get in the described car, and drive the most direct route to Dobey's Motel.  Because only a small number of people are generally privy to an individual's itinerary, it is reasonable for police to believe that a person with access to such information is likely to also have access to reliable information about that individual's illegal activities.  When significant aspects of the caller's predictions were verified, there was reason to believe not only that the caller was honest but also that he was well informed, at least well enough to justify the stop.

Although it is a close case, we conclude that under the totality of the circumstances the anonymous tip, as corroborated, exhibited sufficient indicia of reliability to justify the investigatory stop of respondent's car.

*Id.* at 331-32 (citations, quotation marks, and brackets omitted).

Assuming that the call was truly anonymous,[1] several facts were presented: a white male driving a black Honda Accord between a precise location (2501 Soldiers Home Road) and an intersection of two highways (State Road 225 and US 231) shortly before midnight on Tuesday, February 17, 2004.  All of these facts were corroborated by the officer before he stopped Myers.  Furthermore, despite the allegation in his complaint, it is clear from Myers' Declaration that the caller provided his name, thereby providing yet another indicia of reliability to the anonymous tip.  "Wiete called dispatch to ask the name of the person they were looking for.  Dispatch informed it to be Jason Myers and gave my social security number."  (DE 2 at 1.)  This further demonstrates either that the caller provided the social security number or that the police had

---

1 Though I accept, for the purpose of this opinion, that the identity of the caller was totally unknown to the police, it is possible that the police knew the name, but never revealed it to Myers.  Alternatively, if the call was placed to 911, then it may have been traced to an identifiable address, thereby providing some limited form of identification.  Nevertheless, even if the caller was totally anonymous, this caller provided adequate verifiable facts to meet the standards of *Alabama v. White*.

done adequate research to have otherwise obtained it.  Either way, this provides an additional

basis for finding that the officer had reasonable suspicion to stop Myers.  With his name and

social security number the police verified that the caller was correct that Myers had a suspended

licence.  Though the caller was incorrect that he was wanted on an outstanding warrant,

verification of every detail is unnecessary to confirm the actual offense of driving while

suspended.  The facts of this case are not as close as those in *Alabama v. White*.  Here the officer

was justified in making this Terry stop.

Myers' second claim is against the officer who inventoried the property in his vehicle on

December 17, 2004.  This claim is also barred by the statute of limitations.  But even if it were

not, it too is also substantively meritless.  Here Myers complains that his vehicle was impounded

and inventoried "per department policy."  (DE 1 at 5 ¶ 15.)  Myers asked to make alternative

arrangements, but the Fourth Amendment does not, "demand that police offer a motorist an

alternative means of removing his vehicle that will avoid the need to tow it and conduct an

inventory search."  *U.S. v. Cherry*, 436 F.3d 769, 775 (7th Cir. 2006).  Therefore, if this claim

were timely, it would be dismissed as meritless.

Myers' third claim alleges that an unknown officer, "without justification or probable

cause, wrongfully and maliciously prosecuted the Plaintiff . . .."  (DE 1 at 12 ¶ 48.)  Again,

Myers has both procedural and substantive problems with this claim.  Procedurally,

> it is pointless to include lists of anonymous defendants in federal court; this type
> of placeholder does not open the door to relation back under FED. R. CIV. P. 15,
> nor can it otherwise help the plaintiff.

*Wudtke v. Davel*, 128 F.3d 1057, 1060 (7th Cir. 1997) (citations omitted).  For this reason alone,

the unnamed defendant can be dismissed.  But even if this defendant had been named, the claim

is substantively meritless.  The Affidavit (DE 1-2) which Myers complains about merely

presents the facts included in the two police reports – facts which are substantially the same as

the ones he presents in his complaint and declares under penalty of perjury in his declaration.

> Under *Franks v. Delaware*, 438 U.S. 154 (1978), if a defendant can
> demonstrate by a preponderance of the evidence that the signatory of the warrant
> affidavit made a false statement (or omitted a material fact) either intentionally or
> with reckless disregard for the truth, then a court will consider whether the
> content of the affidavit, setting aside the false material (or including the omitted
> material), is sufficient to establish probable cause.

*U.S. v. Merritt*, 361 F.3d 1005, 1010 (7th Cir. 2004) (parallel citations omitted).  Here, Myers

does not identify any false statements in (or omitted material facts from) the Affidavit of

Probable Cause.  Rather, Myers' real complaint about the Affidavit is that its author should have

known that it was wrong to stop him "based on unconfirmed and incredible information. . . ."

(DE 1 at 1.)  That is to say, this unknown officer should have known that the arresting officers

had committed one or more violations.  Here, even if it were a reasonable inference that Myers

was alleging that the unknown officer knew more than the facts presented in the two reports on

which he based his Affidavit, the actions of the arresting officers did not violate Myers' rights.

Therefore even if the unknown officer were a named defendant, this claim would still be

dismissed.

Myers' fourth claim alleges that the City of West Lafayette and the West Lafayette Police

Department are liable because "the Mayor of the City of West Lafayette and the Police

Commissioner [did not] adequately train, supervise, discipline or in any other way control the

behavior of the defendants in the exercise of their police functions. . . ."  (DE 1 at 13 ¶ 54.)

Because, as previously explained, none of the police officers actions violated Myers'

Constitutional rights, Myers has no claim based on a lack of training, supervision, or discipline. Therefore this claim will be dismissed.

Myers' fifth claim alleges that the deputy prosecuting attorney was wrong to have filed changes against him based on information provided to him by the police and that he was wrong to have continued to prosecute him.  The prosecutor is immune from suit because "in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983." *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976).  Therefore this claim will be dismissed.

Myers' sixth claim alleges that the judge was wrong to have found probable cause, issued a warrant, and permitted his prosecution.  A judge is entitled to absolute immunity for judicial acts regarding matters within the court's jurisdiction, even if the judge's "exercise of authority is flawed by the commission of grave procedural errors." *Stump v. Sparkman*, 435 U.S. 349, 359 (1978).  Making probable cause determinations, issuing warrants, and presiding over criminal cases is within the court's jurisdiction, therefore this claim must also be dismissed.

I have reviewed all of Myer's federal law claims and found each of them baseless.  As a result, all of the federal law claims will be dismissed.  Though it is hard to image that Myers has any state law claims based on these facts, I have not analyzed the state law claims.  Pursuant to 28 U.S.C. § 1367(c)(3), I decline to exercise supplemental jurisdiction over these state law claims.  Therefore they will be dismissed without prejudice.

### III.  CONCLUSION

For the foregoing reasons, the Court:

1.  **DISMISSES WITH PREJUDICE** the federal law claims pursuant to 28 U.S.C. § 1915A; and

2.  **DISMISSES WITHOUT PREJUDICE** the state law claims pursuant to 28 U.S.C. § 1967(c)(3).

**SO ORDERED**.

ENTERED: April 28, 2008

s/ Philip P. Simon
Philip P. Simon, Judge
United States District Court
